Good morning, and may it please the Court. Joseph Ray for Freeman Investment Management. I'd like to focus on the primary, most glaring error in the District Court's decision to throw this case out on summary judgment for lack of particularity. In every trade secret case, plaintiffs, of course, need to identify the trade secret at issue. And we are in agreement here that we are here on summary judgment and there is de novo review. And in this normal summary judgment case, we'd be looking to the evidence to see if there's a genuine issue of material fact such that this case shouldn't have been thrown out and the jury should have decided whether or not the trade secret is identified with sufficient particularity. Here, there is no evidence from anyone at any time suggesting the trade secret was not particular enough to those in the trade. My friends used the IMAX decision from this Court, which did grant summary judgment. But wait, I think you just said it in the negative. And my understanding is it's your burden to prove that it is a trade secret and to show on summary judgment when they're seeking summary judgment, you have to show you had enough evidence to create a genuine issue of material fact. I am having trouble figuring out what you've identified sufficiently to show us that there really is a question that any of this is a trade secret. Yes, but I was referring to the particularity. The particularity. So let's just talk about summary judgment standard. We're on summary judgment. We have to see whether there's a genuine issue of material fact. What evidence do you have to show us that there really is a dispute about whether you've shown any trade secrets? Yes. Well, I believe you're referring now to the confidentiality aspect of the trade secret. I'm actually referring to how we know that any of this is not in the general public knowledge, not known before, not unique enough to really count as any kind of secret. I mean, I look at the list and I think this sounds very general and not like something that you've shown experts have said was totally new and no one knew before. Do you have any expert testimony that says that your list is stuff that wasn't in the public domain? Yes. Our experts, there's two experts presented by the plaintiffs in this case, Mr. Katari and Mr. Porten. And they're at ER 1359 and ER 666. In there you can see excerpts of their expert reports. And what did they say? Because I don't remember your brief citing those experts, so tell us what those say. They specifically say that it's not generally known and that they went through the evidence to show that Russell did, in fact, get these ideas from Freeman. Did you cite that in your summary judgment papers? Of course we did. Where did you do that? I'll give the citations when I come on rebuttal for that. But that wasn't the premise of the district court's decision. But it doesn't matter because we're on de novo review, so we have to figure out is there really a dispute here that needs to go to trial. And maybe the district court said the wrong thing or it sort of doesn't matter at this point. We have to look at the record on summary judgment and say whether this case needs to go to trial or not. Well, I do think that the primary ground of confidentiality, there was evidence in conflict. There was evidence that this information was conveyed in confidence and was tracked, treated as such, and that there were oral agreements at least with each recipient who was logged, each recipient who received any of this information was logged by Mr. Freeman and Mr. Johnson. All in the record. And they never would have thought that Russell would take this information and then use it. There was no volatility index as defined in these trade secrets that was publicly used, that was publicly available. Everyone agrees that Russell first came out with a volatility index, which emphasized the volatility after 2011. I'm sorry, can you point me to somewhere in the expert report specifically that says these ideas were new and not in the public domain? I have the expert report of Professor Katari, ER 1365. So what does it say on that point? It says, I reviewed the trade secret identification, which sets forth the trade secrets similar to in the paper. In my opinion, that those numbered paragraphs in the trade secret identification accurately reflect the subject matter and teachings of the paper. From the evidence I reviewed and from my experience, it is my opinion that those paragraphs describe knowledge that was not generally known to the public or, more importantly, or to those who could benefit from it prior to Freeman's disclosing the VSI paper to Russell. That is ER 1365, paragraph 60 from our expert, who's no doubt an expert, Professor Katari. And did you make an argument about that paragraph in your summary judgment papers? That's what I would get to you. That was not, I would get to that on rebuttal. That was not the issue that was before the district court that the dispute was about. But I understand an overview and you're looking for some alternative grounds for affirmance, it appears, which is what my friend is really pressing in his brief. The concern we had, however, was the identification, because we never could get past the identification. And if you read the transcript of the district court, she was very concerned primarily about the identification of the trade secret and that it lacked particularity. And they led her to believe that the particularity standard was a determination of law, relying heavily on the IMAX decision by this court. I don't believe that's true. While there are summary judgment cases that determine a trade secret has not been particularly identified, those cases are cases where the evidence is such that it is impossible for a defendant to defend themselves and they're unable to participate in discovery or render opinions. We never had any of those issues in this case. We closed discovery. There were no motions to compel. And, in fact, the only motion they brought with regard to this issue was that the trade secrets were not identified pursuant to the California Civil Code. The magistrate judge said, no, the California Civil Code doesn't trump the Federal Rules of Civil Procedure. You need to show violations under Rule 26. There was no such motion that these trade secrets were not identified and improperly disclosed under the Federal Rules of Civil Procedure. So we continued through discovery. Both sides had experts. Their expert, interestingly, never said in his expert report he didn't know what the trade secrets were. Their experts never raised any doubt what the trade secrets were. And so we got to the oral hearing before the district court on summary judgment, and the district court put herself in the rather uncomfortable position of trying to determine for herself whether she understood the trade secret. The problem with that approach is the trade secrets were not really written for her. They're written for those in the trade, and those in the trade fully understood what the trade secrets were. And even the IMAX decision, if we look at that case in its entirety, the IMAX decision, which really is the Ninth Circuit leading case on this subject, makes it very clear that the particularity requirement is through the eyes of those in the trade. I thought, though, the district court's concern was that to the extent you've distilled down the principles that you claim are the trade secrets, they were described at such a level of generality that you couldn't show that they weren't known generally within the industry. And so that was the problem. She was looking to you to say, you're going to have to give me something a lot more specific than this if you're going to be able to claim trade secret protection. That's what I understood the district court's concern. Well, I think that's close enough. And I think she was concerned what she thought was the lack of specificity, no doubt. And from there, she thought she couldn't do her work, including analyzing the other issues. However, the problem is it was not specific enough for her was the problem. It was specific enough for everyone else involved in this case, including the experts. Can you say that to her? I mean, so it does seem like there was some to me it's like a tangent, this reasonable particularity or sufficient particularity. To me, the question is, did you have evidence that you had trade secrets that were stolen? And I read the district court to be using some of this language from California law, but essentially to be saying you're giving me gobbledygook and none of it is a trade secret. And then it seems like your response should have been what you just said to us. Look, our expert is in the industry, and he says it's a trade secret. But I don't see anything that indicates you did that, but maybe I just didn't see it. Yes, and you're right, but I want to clarify. When the judge says this is gobbledygook, which is the premise of your question, gobbledygook to whom? And what did we cite back to her? We cited specifically the testimony that the expert, Mr. Wagner, Wurgler, their technical expert, at ER 633, 634, 636 through 37, that he fully understood the trade secrets and specifically he said he understood trade secrets. Right, right, but that gets to like whether everyone knows what you're talking about, but that doesn't mean they're secret. I mean, this is the thing she says about chocolate cake or whatever. I mean, we can all know we're talking about the sky being blue, but that doesn't mean it's a secret. Well, I disagree with your characterization of her opinion. She raised the chocolate cake to show the lack of meaning to the word emphasis. So I disagree. She was not talking about chocolate cake because she felt it was well known. No, she was using it to show that the trade secret must be subjected to some sort of formulaic precision. And when she was analogizing to a recipe in baking a cake and thinking that Mr. Holcomb, who argued it below, that Mr. Holcomb had to give her a percent in order to define the trade secret. And so she said when you bake a cake, I need to know how much chocolate, not emphasize chocolate flavor. That was her analogy. But that analogy was solely, solely to show that the trade secret was not particularly defined. Nothing to do with the issues of confidentiality and everybody knows how to bake a cake. No, if you look at her opinion on ER, I think it's 22, she specifically uses that to show the lack of precision in the word emphasis. Right. But that's why is that wrong? I mean, as I understand it, she says, look, described at that level of generality, what you're talking about was a bunch of people were thinking about that. Other people in the industry were already focused on that. If you've got if you can drop down to a more tighter level of specificity, then maybe we got something to work with. But you're staying up here. And if that's all you've got, you that's not there's nothing secret about that. Well, so why is that wrong? Again, because she was saying it because it lacks specificity. She wanted a percentage to the word emphasis. And we explained that that has to be the dominant or greatest or the driving characteristic of the index or the fund collection. And there's no doubt in this case, that's exactly what Russell did. This hypothetical. But maybe they did it because everyone understood that's what you do. How do we know that that's secret? Nobody did that. Nobody. Until they met with Freeman, nobody made volatility the dominant or emphatic characteristic of a collection of funds. In fact, when they were considering volatility, it was never higher, never greater, never emphasized more than any other factor. So that's not true. They got that idea from Freeman. Freeman told them to emphasize make volatility great. And so it's a relative concept. And what concerned the district court on the making of the cake is that there was no percentage that Mr. Holcomb could give her. Because the percentage could vary depending on the other qualities or other characteristics in the collection of funds. 50% could be enough. 45% could be enough if all the other characteristics are only 5%. And that's the concept you didn't understand. The percentage is relative. It is an emphasis on volatility, not a precise formula. And I see I'm into my rebuttal time, and I would like to reserve those two minutes if I may. Thank you very much. Okay. Thank you very much. Let's hear from counsel for the defendant. Still good morning, Your Honors. I'm Lee Rubin from Mayor Brown on behalf of Frank Russell Company, and I'm joined by my colleague Donald Falk. Your Honors, the law in this circuit as plainly set forth in the IMAX decision and embraced by every other circuit that has confronted the issue is that a plaintiff has the burden of identifying its trade secret with particularity, and that that sufficient particularity obligation means identifying it sufficiently to separate your alleged trade secret from information that's generally known to the trade and to those specifically knowledgeable in the trade. Are you saying something different than the regular summary judgment standard? And if you are, why is that not a California rule of procedure that's different from Federal procedure, and so it doesn't apply here? Your Honor, I believe that the IMAX decision actually was relying on California, the California Trade Secrets Act, and the other circuits that have addressed the issue have been relying on other State statutes. But in the context of Rule 56, all have indicated, all the courts that have confronted this issue, have indicated that this is a threshold requirement. And it's a threshold requirement because you can't move on to the other inquiries if you don't know the trade secret with sufficient particularity. You can't begin to. It seems like a plaintiff needs to have evidence that they have a trade secret and it was infringed, et cetera. That's the normal summary judgment standard. Are you saying something beyond the normal summary judgment standard? No, Your Honor. I do believe it's the summary judgment standard. I just think it has a particular flavor in the trade secrets context because it often does arise that the plaintiff has invoked generalized descriptions, whether it's referring to a whole group of documents or referring to lists of documents or categories of materials, or sometimes just referring to, as in IMAX, dimensions and tolerances, where courts have said on summary judgment, by the time we get to this point, we've identified your trade secrets with particularity because we, the court Oh, Your Honor. Judge Rakoff? I didn't mean to interrupt you. No problem. So we get to summary judgment and the district judge is making the points you were just making and they have, what, 492 trade secrets they're alleging. Plus. And they say, okay, we think they all are trade secrets, but nevertheless, we'll focus Your Honor's attention on eight or nine. And I think they supplement that later with a specific list. And I didn't see, point me to where she addresses those on the merits. I think she basically says too little, too late. Right, Your Honor. And I think it's important to understand, she does actually address one of those eight on the merits, which happens to have the same phrase that she found too generalized, which was emphasizing volatility. And so those are actually embedded in virtually all the other eight trade secrets that they identified later. But let me just back up just for a moment because the court actually found two independent but related reasons for finding that the plaintiff hadn't met their burden on summary judgment. One was relying largely on the logic of the IDX decision out of the Seventh Circuit was you can't, as a matter at summary judgment in a trade secrets case, you can't essentially designate an undifferentiated mass of material and then ask the court or the defendant to hunt through the details. That's another form of sufficient particularity. It's actually a different strand than the vague and indeterminate kind of concern that she had about the term emphasizing volatility. But that was actually her principal holding. That was something that we pressed in our summary judgment papers, that it was that they were not meeting their burden because that's essentially what they did. They took every single piece of information that was conveyed in the white paper and in some e-mail discussions and essentially labeled all of it as their trade secrets. In fact, the principle of Freeman investment, John Freeman said, I can't really put my trade secret in a box. It's not this ingredient. It's not that ingredient. I can't put it in a box. And their trade secret identification held fast to that description. So that was the principle holding that when you, when a plaintiff offers an undifferentiated mass of information, offers categories of documents, says things in their trade secret identification. I understand that. But I don't quite understand why. So that was their position. She rejects, in effect, that position. But they offer then a fallback. Okay. We don't agree with Your Honor, but we'll at least under the standard you want of specificity, we still think we'd make it with this list of eight. Why doesn't she have to address then that eight? Well, I think the IDX decision and other cases like in this district court, in this circuit, have said if you don't meet that first standard, if you've offered an undifferentiated mass, you don't get to the whole point of the rule. Underlying policy of the rule is you need to put the defendant on notice of what you have. You need for the court to understand what it is you're alleging. So courts have actually said, that's it. If you fail that first test, you can't pass on to this sort of alternative. Well, let me drop back, Your Honor. I know you're concerned that I overwhelmed the defendant with 492-plus trade secrets referring to broad categories of materials. But now that you say so, let me pick eight. Because at that point, the discovery is done. We're at summary judgment. So you get to pick out eight. Then here, I'll give you an example. Trade secret 443 is a graph. It's a graph comparing their supposed volatility style index to a public source portfolio manager's quality index and offering some comparisons. This has literally been cherry picked out of an undifferentiated mass of information. And then at that point, at summary judgment, have never identified this before as a trade secret that they would press either by itself or with seven other discrete trade secrets. That's the unfairness that I think the district court was talking about when they said, this is too late. Now, the district court did actually address trade secret 60, which, as I said, has this term emphasizing volatility. And it said, separate and apart from you've given me all this information, some of which is obviously not a trade secret, that violates the basic rule of IDX. But separately, even if I look very closely at paragraph 60, I don't understand what the trade secret is. You talk about emphasizing volatility. It's undisputed in the record that Russell, eight months before, had developed its own volatility style index that had volatility as a component. So what she essentially did, she turned to them and said, how am I supposed to take this term, emphasizing volatility, and separate it from what's generally known in the trade and from what Russell already has? It captures too much. It doesn't tell me enough. As Judge Wofford said, if they drop down a level, maybe we have something to talk about. But at this level of abstraction, emphasizing volatility is like telling you that an ingredient needs to be emphasized. And so it doesn't provide. So she actually ruled on both prongs. So to that extent, even though she wasn't required to under IDX and many other cases, she dropped down and looked at this trade secret with particularity. With one of them, but it happens to have the same term, the same talismanic phrase that they basically said is throughout all of their trade secrets. So for that reason, Your Honor, I think that it is a fault at the summary judgment stage for both reasons, for both offering 492 trade secrets that have broad categories of information, and even when you isolate the specific formulation they've offered, they cannot offer enough sufficiency. And why doesn't this paragraph 60 in the expert report that says it wasn't known in anywhere else in the public and is secret, why doesn't that create a dispute of fact? Because, Your Honor, even the expert never — the expert essentially invokes the same broad, generalized sweep that the trade secret identification does. He doesn't differentiate. He doesn't actually go through and say, as Your Honor rightly pointed out, that it's the plainest burden to do, to say this is different from information that's otherwise available in the industry and otherwise not known to Russell. He never does that in his expert report. He simply says, I've looked at all these 492 trade secrets. I've looked at everything. It looks like they taught Russell some things that I don't see any evidence Russell knew. But, again, that's sort of taking it all as a mass. And I think what Judge Saleman — So was there discussion at summary judgment of this and whether it was an adequate opinion or did you make that argument against this? Was it even an issue? It wasn't an issue, Your Honor, because — and I think you were referring to this earlier, because when the plaintiff responded to our summary judgment motion, they simply said, defendant has not answered each and every one of these 492 trade secrets. They haven't offered any evidence that they're not common knowledge or that — excuse me, that they're not common knowledge or that they were known to Russell. And because of our failure to take each one step by step, we win. I mean, we get to trial. That was how the issue was framed, and that's how it actually was presented to Judge Sammartino. Was there earlier motion practice where this issue came up, or was this the first time it came up at summary judgment? Your Honor, we had attempted to invoke the California procedural rule that they're not entitled to discovery until they actually sufficiently identify their trade secrets. The magistrate judge in this case found that that procedural rule didn't apply in Federal court. We then did attempt in many different ways to use the tools under the Federal rules of civil procedure to try to get a better understanding about what actually their trade secrets were. We at that point had the 492-plus trade secret designation, so we served interrogatories. We served document requests. We conducted depositions. So the quote that I referred to earlier was an effort at a 30B6 deposition where the corporate representatives say, here we are. This deposition's specifically been designated to identify — to help us identify your trade secrets. What is your trade secret? It's a little bit. A little bit of this. It's a little bit of that. I can't put it in a box. So we used every tool that we could imagine. And as we read the case law, the very first time legally that we could, quote, bring a motion to alert the Court that we did not believe the plaintiffs met their burden was at summary judgment. That's what the IDX decision says. That's what the IMAX decision says. That's what the district courts say. That's the procedural time. At summary judgment, by the time you get to summary judgment, you must identify your trade secrets with particular, just like you have to show a genuine issue of fact with respect to every other element of your case in order to get to trial. So that's when it was presented. It was presented clearly, excuse me, in our motion and in our reply brief. And I believe that's what Judge Sammartino was responding to. She was, of course, also responding to the whole notion of getting to the point of summary judgment and having 492-plus trade secrets to figure out how you would bring in the jury instructions for 492 trade secrets. I know the cases have used this language about particularity. But at the summary judgment stage, do you think it's any different than saying you have to come forward with specific evidence of the elements of your claim? No. I think it's essentially a common-sense antecedent to that obligation. But is it an antecedent or is it just exactly the same? I mean, I don't – I'm just trying to figure out whether this language that I think was imported from California procedure is actually adding anything to the burden the plaintiff always has in resisting summary judgment to show evidence that a jury could find for them. I think, Your Honor, I think it could easily be understood as effectively the burden on summary judgment to show there are genuine issues of fact of whether a trade secret exists and whether there's value from the secrecy of the secret. And so to that extent, whether one calls it a corollary or a natural outgrowth, it is that in order to answer those questions, you have to identify your trade secret with sufficient particularity, or otherwise there would be no understanding of how the court then goes about saying, do I have any factual issues about whether it's secret? And if one talks about emphasizing volatility in a world where many, many people in the industry have talked about using volatility, Russell itself – and counsel concedes this – Russell itself was the pioneer in style indexes. I mean, there's an irony here that they were the ones who developed value and growth and large cap, small cap. So this was their entire rubric. And so they, of course – the evidence shows that it really is undisputed that ER 965, 966 had already this stability index idea that included volatility as one of the attributes. And the evidence is also undisputed that they had tested pure volatility as a run-up to that. None of this, obviously, was secret. And this idea of identifying your trade secrets, you have to put the other side on notice. And if it's too vague and uncertain, they're not on notice. I see I have 45 seconds, so I'll address any other question the court may have. It doesn't look like we have any. Thank you for your argument. Thank you. Let's hear from counsel for the point of no rebuttal. You've got a little under two minutes. Yes, I think Judge Friedland has raised the real nub of the issue. This is not the same as just showing proof of your claim. This is a rule so that the defendant is not subjected to abuse of discovery. And this rule came out of California. But it wasn't used that way in this case because the district court said, I won't apply it that way. Right. And the district court said, Rule 26 governs. And there was no motion to compel, that we were never given any motion. They did not do anything to the court to say the trade secrets were inadequate. And, in fact, in IMAX, the reason why summary judgment was granted. But it's your burden. So they say on summary judgment, they have no evidence, and you have to show some evidence that is actually going to get to a jury. So I still am not sure how you did that. So on summary judgment, did you point to this expert report? Was there argument about whether it was enough? Of course we did. And that was your question. And I came back in rebuttal for that, too. ER 556, by the way, it's exhibit 108, is the Qatari expert report. It is cited throughout our summary judgment opposition. In particular, the pages I direct the court to, 556, 566, 574. And the point is, when you get to the jury and have a pretrial conference, often we take the identification and we synthesize it down for jury instructions. That's what normally occurs at the pretrial conference. That's what Mr. Holcomb expected would happen. But, no, it was on summary judgment they raised this. And, by the way, they, since we do want to look at the motion papers. I'm sorry. I'm looking at ER 556. So where is it talking about the expert report? Every time you see a cite to exhibit 108. So line 24, line 27. Those are all citations to the expert report. But I agree we should go to the motion and see what happened. But they never moved on trade secret number 60. 60 was not even in their motion. It was never briefed, trade secret number 60. No, I mean, the sentence that that's referring to is just saying Russell used this idea. But I don't see it to be saying this was a new idea, a unique idea, an idea that wasn't in the public domain. Okay. We have more of those. And that was the paragraph I showed you already in the Qatari. It says, use of complex report Qatari upon the Russell used it to its benefit. Again, on 574. It was internal Russell e-mails that researched on their own research. Paragraph 93. Right. That's not saying that it wasn't known by other people, too, though. Well, that's the paragraph I gave you in my opening. That paragraph was specific. Right, right. But where was it shown to the judge? I mean, I just don't understand how you met your burden at summary judgment. Well, because you're changing the issue on Mr. Holcomb and as we presented it below. The issue was trade secret 60 and specificity. And they never moved to compel. They never even briefed trade secret 60. And you're asking me if I said something about that trade secret that shows it's confidential. I don't think that's fair process. The process, if you read their brief, this sounds like an abuse of discretion case. Their brief is constantly about gamesmanship and all of this. I thought we're up here on summary judgment. And their brief reads like we were sanctioned. And that's what really happened here. This was a sanction that shouldn't have been. This should be summary judgment. And it should be about the expert reports. I think you're on the right track. But that's not what the district court was looking at. Okay. Thank you, counsel. Thank you. Thank you for your arguments. The case just argued will be submitted. And we are in recess for today.
judges: Watford, Friedland, Rakoff